SAFETY CASUALTY COMPANY V. DAISY WRIGHT, ET AL.

No. 7768. Decided January 14, 1942.
Rehearing granted February 18, 1942.
Second rehearing overruled March 25, 1942.
(160 S. W., 2d Series, 238.)

*Vinson, Elkins, Weems & Francis, McCombs & Davis* and
*C. M. Hightower,* all of Houston, for plaintiff in error.

Deceased was not engaged in his usual course of employ-
ment at the time of his death. Smith v. Texas Emp. Ins. Assn.,

129 Texas 573, 105 S. W. (2d) 192; Wallace v. Texas Ind. Ins. Co. 94 S. W. (2d) 1021; Viney v. Casualty Rec. Exch., 82 S. W. (2d) 1088.

*Pitts & Lyles,* of Conroe, and *Campbell & Foreman,* of Livingston, for defendants in error.

The deceased being in the actual discharge of his duties as a pipe line walker, within regular hours, and using the customary means from going from one point to another on the pipe line that he regularly inspected and the company knowing that he used such means, was within the scope of his employment, within the meaning of the workmen's compensation law, at the time he received the injuries which resulted in his death. Fritzmeier v. Texas Emp. Ins. Assn., 131 Texas 165, 114 S. W. (2d) 236; Maryland Casualty Co. v. Smith, 40 S. W. (2d) 913; Travelers Ins. Co. v. Peters, 18 S. W. (2d) 590.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This is a workmen's compensation case. On July 22, 1938, Valentine C. Wright received burns which resulted in his death two days later. At the time of his injury Wright was an employee of Magnolia Pipe Line Company. Safety Casualty Company was such employer's compensation insurance carrier. Mrs. Daisy Wright, surviving widow of Valentine C. Wright, deceased, on behalf of herself, and one behalf of the three minor children of herself and the deceased, duly filed claim for compensation with the Industrial Accident Board. Such Board denied compensation, and Mrs. Wright in her own behalf, and as next friend of the minor children, filed this suit in the District Court of Montgomery County, Texas, against the above-named insurance carrier to recover compensation under the Workmen's Compensation Laws of this State. Trial in the district court, where the case was submitted to the jury on special issues, resulted in a verdict and judgment for Mrs. Wright et al. This judgment was affirmed by the Court of Civil Appeals. 140 S. W. (2d) 923. Safety Casualty Company brings error.

In response to Special Issue No. 1 of the court's charge, the jury found that Wright was acting within the course of his employment with Magnolia Pipe Line Company at the time he received the burns which resulted in his death. By proper

assignment the casualty company contends that there is no evidence in this record to sustain the above finding. Such company further contends that the undisputed facts of this record affirmatively show that Wright was not acting within the course of his employment with the above-named employer at such time. These contentions make it necessary for us to make an. extended statement of the facts.

The material facts of this record, as established by the verdict of the jury, show: That at the time of his injury Wright was employed by Magnolia Pipe Line Company as a pipe line walker; that at such time the above-named company owned and operated an oil pipe line, a section of which lay between the City of Conroe, in Montgomery County, and the Trinity River; that Wright's duties required him to walk this pipe line between the above two points, a distance of about fifty-two miles, once each week; that Wright was required to repair any leaks that he might find in the above line, and for that purpose was required to carry certain tools; that necessarily these tools would have to be carried back after the end of the section of the line walked had been reached; that Wright lived with his wife and children in Cleveland, which was about midway between the ends of the section of the pipe line Wright was employed to walk and keep in repair; that the pipe line company had a station in Cleveland from which Wright would usually depart in the morning when he left to walk the pipe line; that Wright would return to such station in the afternoon, or when he got back from walking the pipe line and make his report; that Wright usually started out to walk the pipe line about six o'clock in the morning, and did so on the day he received these fatal burns; that the pipe line company did not furnish Wright any means of travel in going to the pipe line and coming back after he had completed his walking thereof; that the pipe line company allowed Wright $15.00 per month expenses; that the pipe line company did not attempt to exercise any manner of control over Wright's means of travel in going to and coming from the pipe line; that in such instances he was allowed to choose his own mode and means of travel; that in such instances Wright sometimes used his own car, sometimes walked, sometimes caught a ride, and sometimes rode the public bus, which ran for quite a distance parallel with and near to the pipe line; that Wright's employer knew that he used all of the above means of travel and approved the same; that Wright had a pass over the bus line above mention, which the pipe line company had

assisted him in obtaining; that on the day he was injured Wright began walking the pipe line some four miles from Cleveland, and walked to Conroe; that on reaching Conroe, Wright boarded the bus above mentioned, intending to ride thereon back to the point on the pipe line where he had begun walking in the morning, and that when such point was reached Wright intended to get off of the bus and walk the pipe line back to the station at Cleveland, where he would make his report. At this point, we think we are justified in concluding that Wright had his tools with him in returning to the point above designated.

The testimony further shows that when the bus on which Wright was riding reached a point about midway between Conroe and Cleveland something happened to the bus which caused it to stop. It was during this stop that Wright received the burns which caused his death.

The testimony is somewhat conflicting as to just how and where Wright received his burns. In regard to such matter the record presents two distinct and very divergent theories, viz.:

(a) According to the statement of the deceased, made very shortly after the accident, it was shown: That when the bus stopped it was discovered that its gas line was broken and leaking gasoline from such break; that the bus driver asked Wright to get under the bus and stop the leak; that Wright attempted to comply with such request, and went under the bus in an effort to do so; that while Wright was under the bus the driver struck a match and threw it on the place where the gasoline which had leaked from the broken gas line had accumulated; that such lighted match caused the gasoline to explode; and that such explosion blew Wright almost out from under the bus, and fatally burned him.

(b) According to the testimony of the bus driver it was shown: That when the bus stopped he investigated the cause and found that the gas line was broken; that gasoline was leaking from such break; that he secured a wooden plug or pin and started to get under the bus to drive the plug into the broken end of the gas line; that Wright insisted that he be permitted to get under the bus and stop the leak; that Wright took the plug, got under the bus, and found another leak farther

back; that Wright then got out from under the bus; that he, the driver, then decided to catch a ride to Conroe or Cleveland to get help; that he, the driver, then stepped in front of the bus; that when he did so Wright was standing on the right-hand side of the bus by the door; that Wright then reached in his pocket to get his tobacco and get a match to light his pipe; that Wright then let his hand drop beside him, and the explosion happened. At this point, we think that the record taken as a whole justifies the conclusion that Wright's clothing was ignited, causing him to be fatally burned. We here quote the following facts found by the Court of Civil Appeals in its opinion on motion for rehearing:

"(1) That the accident happened on Thursday about 3:00 o'clock in the afternoon and from the point where deceased intended to get off of the bus and walk the line to the Magnolia pump station at Cleveland, Texas, was a distance of some three or four miles. Under deceased's contract of employment he was not required to walk this portion of the pipe line that afternoon, but could have walked it the next day, Friday, or on Saturday, because he had walked the east end from Cleveland to the Trinity River the first part of the week. With the exception of this portion of the line deceased's entire section of 52 miles had been covered that week.

"(2) The Magnolia Pipe Line Company did not require deceased to return to Cleveland at the end of each day, but he was privileged to spend the nights away from home, and had spent the nights at Trinity River (the terminus of the east end of his line) and at Conroe (the terminus of the west end of the line). However he was frequently called out at night to assist in emergency repairs on the line, and as he resided at Cleveland, which was near the middle of the section of line he had to cover, and lived near the pipe line station he practically all of the time returned to his home at Cleveland to be on hand if called suddenly for extra services. This was known by agent at Cleveland. The times he spent the night at the river or at Conroe were during the first four years of his service when he rode horseback over the line—he had been constantly performing this service for nineteen years.

"(3) The bus which deceased was riding when he was injured was owned by one C. D. Thomas. Lawrence Pate was the driver and it was his duty to keep the bus in repair. The Magnolia Pipe Line Company had no interest in or control

over the bus, or its operation, and the company did not require deceased to assist in repairing it, but the company did know that deceased used the bus in the discharge of his duties to the company, and made no objections to such use. It left deceased free to arrange his schedule of walking the pipe line, and free to choose his methods in getting over the line. The injury occurred on Highway No. 105 which ran near to and practically parallel with the pipe line for a great part of the distance between Conroe and Cleveland. The accident was at a point on the highway some eleven miles from the place where deceased intended to get off of the bus and resume walking the pipe line back to Cleveland."

Under the above record, the casualty company contends that Wright was not in the course of his employment with Magnolia Pipe Line Company when he received the burns which caused his death. If that is true this judgment cannot stand. It is only injuries received in the course of employment that are compensable under our Workmen's Compensation statutes.

■ Before proceeding further we deem it advisable to state certain rules of law which we think control the decision of this case. Such rules are as follows:

1. It is the general rule that an employee is not regarded as within the course of his employment while merely going and returning from his work over and along the public streets or highways. U. S. Fidelity & Guaranty Co. v. Flanagan, 134 Texas 374, 136 S. W. (2d) 210. But where, in the performance of his work, an employee is required to travel from place to place, the means of travel being immaterial to his employer, an injury received while so traveling is ordinarily compensable. 45 Tex. Jur., p. 486. In this connection, it is the law that an injury received by an employee while traveling on a public street or highway is regarded as received in the course of employment, if such employee at the time of injury, was engaged upon an errand on behalf of his employer, and within the scope of his employment. Southern Casualty Co. v. Ehlers (Civ. App.), 14 S. W. (2d) 111; Smith v. Texas Employers' Ins. Ass'n, 129 Texas 573, 105 S. W. (2d) 192. In the last cited case it is held that if a servant, in the course of his master's business, has to use a public street or highway, he is in the course of his employment in making such use.

■ 2. An injury sustained by an employee in the course of his employment "shall include all other injuries of every kind and

character having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere." Article 8309, Subdiv. 4, R. C. S. 1925.

■ 3. An injury arises out of employment, within the meaning of Article 8309, Subdiv. 4, supra, when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. In this connection, it may be said that a risk is incidental to employment when it belongs to or is connected with what a workman has to do in performing his contract of service. Texas Employers' Ins. Ass'n v. Cobb (Civ. App., writ refused), 118 S. W. (2d) 375; Maryland Casualty Co. v. Smith (Civ. App.), 40 S. W. (2d) 913. Stated in another way, "an injury has to do with and arises out of the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business." Lumbermen's Reciprocal Assn v. Behnken, 112 Texas 103, 246 S. W. 72, 28 A. L. R. 1402.

■ 4. Under our compensation statutes, to entitle an injured employee to compensation, it is not required that he be discharging some specific duty connected with his employment at the time of injury. In regard to such matter, it is sufficient if it is shown that the risk was incidental to the work being performed. Of course, the exceptions contained in Article 8309, supra, must be observed. Federal Surety Co. v. Ragle (Com. App.) 40 S. W. (2d) 63; 45 Tex. Jur., p. 466, Note 9.

When we come to view this record in the light of the above-stated rules of law, we are unable to say that the jury's finding that Wright was acting in the course of his employment for Magnolia Pipe Line Company at the time he received his fatal burns is without any support in the record, or that such finding is contrary to the undisputed facts contained in the record. Even if it should be held that if Wright went under the bus in question here to stop a leaking gas line thereon and received his injuries while engaged in such undertaking, he, during such time, departed from the course of his employment with the Magnolia Pipe Line Company, a point we do not decide, still we would be unable to say that the casualty company is not liable in this action, because there is evidence in this record which would justify a fact conclusion that Wright's injuries were received after he had completed

his operations under the bus, and resumed his status as a passenger thereof. In this connection, it is true that the evidence does not show that Wright had actually gotten back in the bus, but it would not run, and we do not think that it was necessary for him to actually reboard it in order to occupy the status of a passenger if he occupied such status before it stopped.

■ Finally, we are of the opinion that the facts above recited are sufficient, in law, to support a fact finding that Wright was acting within the course of his employment with Magnolia Pipe Line Company within the meaning of Subdivision 4, Article 8309, supra, while he was a passenger of the bus here involved. We think there is no escape from this conclusion, because (a) his employment required him to travel from place to place; (b) his injury arose while so traveling and resulted therefrom; and (c) the risk he incurred was incidental to and arose out of his traveling.

In making his closing argument to the jury one of counsel for the plaintiffs made the following statement:

"Lets see about Jim Sanders. He said Jim Sanders has been on juries from time to time. Was Jim Sanders trying to do something unlawful? No. Could he have sat on this jury? He was honest enough to say, 'I know too much about it. Let me off.' If Jim Sanders is not the kind of a man the jury can believe, then Camy Hightower (of counsel for appellant) you could have put somebody on the stand that would testify he can't be believed.

"You go to messing with these railroads and insurance companies and these big corporations and I be darned if they don't smoke you out of the country if you don't fight them from day light to dark.

"They even brought a man that went to work in October. He didn't testify, but he was willing."

No objection was made to the above argument at the time it was made or thereafter during the actual trial. It was assigned as error in the motion for new trial filed by the casualty company.

In our opinion the argument in regard to the witness, Sanders, was justified by the manner and contents of his cross examination as a witness by counsel for the casualty company.

We approve the holding of the Court of Civil Appeals in regard to this portion of the argument.

The balance of the argument was improper. All litigants stand equal before our courts. It is improper for any argument to be made to the jury which would tend to excite passion or prejudice against any litigant as a class. In spite of this we think this matter presents no reversible error. The argument should have been objected to at the time it was made. Had this been done its harmful effect, if any, could have been removed by proper instruction by the trial court to the jury.

The judgments of the Court of Civil Appeals and district court are both affirmed.

Opinion delivered January 14, 1942.

### ON MOTION FOR REHEARING.

This cause is before us on motion for rehearing, filed by Safety Casualty Company. We refer to our original opinion for full statement of the facts and issues of this case. In our original opinion we held:

"When we come to view this record in the light of the above-stated rules of law, we are unable to say that the jury's finding that Wright was acting in the course of his employment for Magnolia Pipe Line Company at the time he received his fatal burns is without any support in the record, or that such finding is contrary to the undisputed facts contained in the record. Even if it should be held that if Wright went under the bus in question here to stop a leaking gas line thereon and received his injuries while engaged in such undertaking, he, during such time, departed from the course of his employment wtih Magnolia Pipe Line Company, a point we do not decide, still we would be unable to say that the casualty company is not liable in this action, because there is evidence in this record which would justify a fact conclusion that Wright's injuries were received after he had completed his operations under the bus, and resumed his status as a passenger thereof. In this connection, it is true that the evidence does not show that Wright had actually gotten back in the bus, but it would not run, and we do not think that it was necessary for him to actually reboard it in order to occupy the status of a passenger if he occupied such status before it stopped."

In its motion for rehearing the Safety Casualty Company calls our attention to the fact that the plaintiffs' petition in the district court specifically plead that Valentine C. Wright received his fatal burns while he was under the bus in question here, and while performing a service for the bus company. In this connection, we note that such pleading alleges:

"3.

"That on the date last aforesaid, the said Valentine C. Wright had walked that certain portion of said Pipe Line, extending to, or practically to the town of Conroe, and as a part of his day's work, was to walk another portion of said line beginning at a point a number of miles East of Conroe, and extending in the direction of Cleveland, and that in order to reach the beginning of the second section intended to be walked on that certain date, it was necessary for him to travel by bus to the point on said pipe line where he was to begin walking the second section, and while in the actual discharge of his duties as an employee of the Magnolia Pipe Line Company, traveling on said bus in connection with his duties and in aid of the performances of the same, the bus on which he was riding, developed trouble, including among other things, a broken gas line, by reason of which the same would not run, and that the said Valentine C. Wright at the instance, solicitation and request of the bus driver, undertook to assist in making the repairs, which was also necessary in order that he may continue his journey to the second section of the pipe line to be walked that day and enable him to reach there in time to complete said task during the daylight hours, and that while so assisting in making the repairs to said bus, he became saturated with gasoline which was ignited by someone other than himself striking a match and carelessly throwing the same in and on said gasoline that had spilled from said car, causing the said Valentine C. Wright to receive severe burns to the major portion of his body, resulting in his death two days subsequent thereto.

"4.

"Plaintiffs further plead in the alternative that if they be mistaken as to the allegations that said Valentine C. Wright was on said date traveling on the bus to reach a point East of Conroe, on the Magnolia Pipe Line and walk an additional section that day, then and in that event, plaintiffs plead as follows:

"That on the date last aforesaid, the said Valentine C. Wright had walked the certain portion of said pipe line extending to or practically to the town of Conroe, and was on said date returning on a bus operated over State Highway No. 105 from Conroe to Cleveland, and that while so returning to make his report before going home, and while in the active discharge of his duties as an employee of The Magnolia Pipe Line Company, the bus on which he was riding developed trouble, including among other things, a broken gas line, and that the said Valentine C. Wright at the instance, solicitation and request of the bus driver undertook to assist in making repairs, which was also necessary in order that he may continue his jurney back to Cleveland, Texas, and, that while so assisting in making repairs to said bus, he became saturated with gasoline which was ignited by someone other than himself striking a match and carelessly throwing the same in and on said gasoline that had spilled from said car, causing the said Valentine C. Wright to receive severe burns to the major portion of his body, resulting in his death two days subsequent thereto."

A reading of the above pleading will disclose that it in substance specifically alleged: *That while Wright was traveling as a passenger on said bus it developed trouble; and that such trouble included a broken gas line; that by reason of the trouble the bus would not run; that Wright, at the instance and solicitation of the bus driver, undertook to assist in making repairs on the bus; and that, while so assisting in making the repairs, Wright "became staturated with gasoline which was ignited by someone other than himself striking a match and carelessly throwing the same in and on said gasoline that had spilled from said car, causing the said Valentine C. Wright to receive severe burns to the major portion of his body, resulting in his death two days subsequent thereto."*

An examination of our original opinion will disclose that the proof offered by the Wrights was in harmony with the above pleading, and showed that Wright received his fatal burns while he was under the bus in question here, attempting to repair a broken gas line thereon. On the other hand, the evidence offered by the Casualty Company contradicted the evidence of the plaintiffs, and showed that when Wright received his injuries he had completed his repair operations under this bus, and resumed his status as a passenger thereof.

It is shown that the case was tried on the theory pleaded by the Wrights. This is demonstated by Special Issue No. 6, as follows:

"Do you find from a preponderance of the evidence that the deceased, Valentine C. Wright, in the act of getting under and attempting to repair the broken down bus stepped aside from his course of employment as a pipe line walker for the Magnolia Pipe Line Company?"

The jury answered the above issue, "No."

The Casualty Company contends that under the above record this judgment against it cannot stand merely because there is evidence in this record showing that Valentine C. Wright received his injuries after he had completed his efforts to repair this bus and had resumed his status as a passenger thereof. In this connection, the Casualty Company calls particular attention to the fact that not only did the Wrights specifically plead that Valentine C. Wright was injured while attempting to repair this bus, but, as is shown by Special Issue No. 6 and the answer thereto, supra, the case was submitted to the jury on that theory.

■■ We are compelled to sustain the above contentions of the Casualty Company. The Wrights were, and are, bound by their pleadings. A plaintiff can recover, if at all, only on the cause of action pleaded by him. The office of a pleading is to define the issue to be tried. It is certainly the general rule that an admission in a pleading, on which a party goes to trial, is taken against him. It is the further rule that the pleadings and the evidence must coincide. Finally, it is the rule that parties are restricted in the appellate court to the theory on which the case was tried in the lower court. 33 Tex. Jur., p. 647; 3 Tex. Jur., p. 171, id. p. 168; Heid Bros., Inc. v. Reisto, 281 S. W. 638; Barnes v. Central Bank & Trust Co., 153 S. W. 1172; Riverside Lumber Co. v. Lee, 7 Texas Civ. App., 522, 27 S. W. 161; Hamilton v. Eiland, 181 S. W. 260; Vitovsky v. Gallia, 268 S. W. 1026; Red River County v. Graves, 288 S. W. 544; Nelson v. Richardson, 299 S. W. 304; Smith Detective Agency, etc. v. Town of Highland Park, 5 S. W. (2d) 598; Tulsa Pipe Line & Supply Co. of Texas v. Emmell, 10 S. W. (2d) 143; Boatner v. Providence-Washington Ins. Co., 241 S. W. 136; Johnson v. Employers' Liability Ins. Corp., 112 S. W. (2d) 449; New Amsterdam Casualty Co. v. Scott, 54 S. W. (2d) 175.

■ After a careful consideration of the question, we are compelled to the conclusion that, notwithstanding the fact that we still hold that Valentine C. Wright was in the course of his employment with Magnolia Pipe Line Company while a passenger of this bus, still it would be unreasonable, under the facts of this record, to say that he was in the course of such employment while under such bus for the purpose of making repairs thereon, either of his own volition, or at the request of the bus driver. Certainly at such time he had turned aside from the course of his employment with the Pipe Line Company, and was in the course of performing services for the bus owner or its driver. Texas Employers' Ins. Assn. v. Bailey (Civ. App.) 266 S. W. 192, writ refused; Aetna Life Ins. Co. v. Burnett (Com. App.), 283 S. W. 783; Aetna Life Ins. Co. v. Matthews (Civ. App.), 47 S. W. (2d) 667, writ refused; Ocean Accident & Guaranty Corp. v. Riggins, (Civ. App.), 291 S. W. 276, writ refused; Langford v. El Paso Baking Co. (Civ. App.), 1 S. W. (2d) 476, writ refused.

Except as expressed in this opinion on motion for rehearing, we still adhere to the views expressed in our original opinion.

The motion for rehearing filed herein by the Casualty Company is granted. The judgment heretofore entered by this Court, affirming the judgments of the Court of Civil Appeals and district court, is set aside, and judgment is now here entered revering the judgments of such courts, and remanding this cause to the district court for a new trial.

Opinion delivered February 18, 1942.

Second motion for rehearing overruled March 25, 1942.