TEXAS EMPLOYERS INS. ASS'N v.
FERGUSON.

No. 14754.

Court of Civil Appeals of Texas.
Fort Worth.

June 14, 1946.

Rehearing Denied Oct. 11, 1946.

Crowley, Gambill & Smith and S. A. Crowley, all of Fort Worth, for appellant.

E. L. Bristor, Carter, Gallagher & Barker, R. Guy Carter, Howard Barker, and Ben T. Warder, Jr., all of Dallas, for appellee.

SPEER, Justice.

This is a workman's compensation case. Mrs. Cora A. Ferguson, a widow, mother of Thomas Jackson Ferguson, deceased, sued as beneficiary to recover statutory compensation as against Texas Employers Insurance Association, carrier of compensation insurance on the employees of B. R. Bradford, doing business as Bradford Transfer & Storage Company.

At the beginning of the trial counsel for the insurance carrier admitted in open court that Thomas Jackson Ferguson met his death on November 20, 1944, from an accidental injury described in the pleadings of the parties, and that if plaintiff, Mrs. Cora A. Ferguson, should recover, it should be upon the basis of $20 per week, and should be discounted as provided by law and paid in a lump sum.

The controversy was boiled down to the issue of liability or no liability under the circumstance surrounding the death of the employee.

The general picture here presented is in substance: Thomas Jackson Ferguson was an employee of Bradford and his duties were to drive a truck in picking up loads of freight and transporting it to its destination, both in the city of Fort Worth and to distant points throughout the state. The employer's business was conducted from a building 50 feet wide fronting on Main Street and extending through the block to Commerce Street. The building is located in what is commonly known as the wholesale or industrial district of Fort Worth, Texas. A railway switch track extends north up Commerce Street immediately adjacent to the fronts of buildings thereon and the rear of buildings which front on Main Street and extend through the block as did Bradford's. A railway switch track lies between the buildings and the part of Commerce Street generally used for vehicular traffic. Main and Commerce Streets are parallel and extend north and south; Commerce Street was a "one way"

street, traffic going south. The Lind Paper Company, a concern having no business connection with the business of Bradford, occupied a building of same width, adjacent to and immediately south of the building occupied by Bradford. Lind's building also extended through the block and its Commerce Street end extended even with that of Bradford's. On the Commerce Street end of these buildings both concerns maintained platforms or docks two or three feet in height for the purpose of loading and unloading merchandise and freight coming in and going out; the docks joined, and a crude set of steps from the ground to the top of the dock was maintained by Bradford at the south end of his dock; the steps were commonly used by both concerns. Large trucks and vans used by the respective business concerns, as well also similar vehicles doing business with each of them, used these docks for loading and unloading purposes. There were times when large vehicles were backed up to these docks making it very difficult for yet another large truck to back into either dock. All that we have said had to do with the situation in which the employee lost his life.

Plaintiff's pleadings contained all necessary allegations of deceased's employment by Bradford, the nature of his work, and that while in the course of his employment he was fatally injured; that at the time he was injured several trucks, including some of those belonging to the employer, were backed up to the dock, one of which was located approximately three feet from the south end of Bradford's dock, adjacent to the Lind property; that a car was parked against the Lind dock approximately fifteen feet from the parked truck of Bradford, leaving a clearance of about fifteen feet between the two vehicles. One Roland Berry, the driver of a large six-wheel van belonging to another business concern, transacting business with Lind Paper Company, was attempting to back his truck or van into the vacant space at the Lind dock for the purpose of unloading his merchandise into the elevator located in the Lind Paper Company building; that Berry had gotten his truck into such a position that the tractor part thereof was in front of the Bradford property and thereby obstructed the movement of trucks to and from the Bradford dock; that Berry was unable to get the truck into the narrow space, unaided, without obstructing the movements of Bradford's trucks and without endangering the safety of Bradford's trucks; that deceased "endeavored to act as a guide to said Berry so as to give him instructions and directions as to how to manipulate such truck in order to back it into the desired space without damaging the property of Bradford and without damaging the trucks parked at the Bradford dock, and that in doing so the deceased was performing duties incident to and as a necessary part of his employment and was furthering the interest of his employer in the following respects:" The substance of the enumerated reasons for his acts are: (1) Carrying out express instructions to aid, when needed, all truck drivers to back into Lind Paper Company's dock; (2) to remove the Berry truck from Bradford's property wherein it had obstructed the movements of the Bradford trucks; (3) to prevent the "Berry" truck from damaging the Bradford truck then parked at the south end of the dock; (4) to remove the Berry truck from its position where it had obstructed the Bradford truck from its free passage from the dock into the lane of traffic going south; (5) to enable the driver of the Berry truck to get his vehicle out of the street where it was blocking traffic and preventing vehicles and other trucks coming into and going out from Bradford's dock; (6) that deceased was not only following his instructions to render such assistance to other truck drivers but was following a custom among Bradford's employees which had been practiced for a long period of time.

Allegations were made that while deceased was so assisting and directing the driver of the Berry truck, it was backed in a way so as to pin him against the Lind dock, crushing him, from which injury he died shortly thereafter.

Defendant filed a plea in abatement upon the grounds that the pleadings of plaintiff disclosed that deceased had brothers and sisters and they were not made parties to the suit; that defendant did not know their names or addresses and that any beneficial

recovery in this case belonged one-half to the mother and one-half to the brothers and sisters, and that such brothers and sisters were necessary parties since they would not be bound by a judgment in the present state of the pleadings and if recovery was had by the mother, it would have no protection against a further claim by brothers and sisters. The plea in abatement was overruled; we shall notice it again in this discussion.

Subject to its plea in abatement, defendant answered with a general denial and by special denials to the effect that deceased was not acting within the scope or course of his employment at the time he received his injuries; that the things being done by deceased at the time he was injured "did not have to do with and originate in the work, business, trade or profession of Bradford," and that deceased was not then and there "engaged in or about the furtherance of the affairs or business of Bradford Transfer and Storage Company." Upon these pleadings the case was tried to a jury.

At the conclusion of taking testimony defendant moved for an instructed verdict, asserting that the undisputed testimony showed it to be entitled thereto. The motion was overruled, and it then filed three special issues and requested that they be submitted to the jury; the requested issues were likewise refused. Plaintiff requested a peremptory instruction based upon the contention that the uncontradicted testimony entitled her to same. Plaintiff's motion for summary instruction was sustained and the jury was so instructed; the court entered judgment for plaintiff on the verdict returned. Hence this appeal by the defendant, the insurance carrier.

The first point of assigned error complains because the court gave an instruction for verdict in plaintiff's favor. After a very careful study of this entire record we are convinced that there was a jury question raised by the evidence and the trial court fell into error in giving the peremptory instruction.

■ It has long been the settled rule in this state that when a jury is demanded its functions are to pass upon the weight of the testimony, the credibility of the witnesses, and to determine all controverted issues of fact. Under our present system the facts are generally determined by answers to special issues without regard to the effect such answers may have upon the judgment to be entered, thus removing from laymen constituting the jury the temptation that might arise for them to return a verdict for or against some party litigant.

■■ It is none the less true that a trial court may, and it becomes his duty to, instruct a verdict when the material issues are properly pleaded and the evidence is such as to indisputably prove such facts, leaving no controverted issue of fact for the jury to determine. Also a verdict should be instructed for one of the parties when there is no evidence to support the material issues relied upon by the opposing party—when the jury can reach no other correct conclusion than such a verdict as that requested to be instructed—that is, when the evidence is all on one side. 41 Tex.Jur. 935, 936, sec. 166, et seq. There are many cases holding that an instructed verdict was proper in the case decided; this of course is proper in many instances.

■ The converse or other side of the question is equally well settled. Some of the tests laid down for consideration are expressed in cases to be presently noted. To authorize the court to take a case from the jury the evidence ·must be of such a character that there is no room for ordinary minds to differ as to the conclusions to be drawn from it. 41 Tex.Jur. 939, secs. 169 and 170; Lee v. International & G. N. R. Co., 89 Tex. 583, 36 S.W. 63. Before a court can properly instruct a verdict he must find and believe that the evidence "provided no reasonable basis for opposite conclusions by ordinary minds." Woods v. Townsend, Tex.Sup., 192 S.W.2d 884, 886. "If there is any material issue of fact arising from the evidence, it must be submitted, and it is error to direct a verdict, the test of such issue being whether there is any probative evidence which, considered by itself and accepted as true with the inferences arising therefrom, would call for a finding of fact and a verdict accordingly." 41 Tex.Jur. 939, sec. 168. If there is any

evidence of probative value it must be construed in the light most favorable to the adverse party and against the motion for an instructed verdict. City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442. "On motion to direct a verdict the court presumes to be true the evidence of the opposite party, who is entitled to the most favorable construction that it will properly bear and to the benefit of all reasonable inferences arising therefrom. * * * All contradictory evidence is left out of view." Burroughs v. Smith, Tex. Civ.App., 294 S.W. 948, 950, writ refused. The trial court should instruct a verdict only when all the testimony, taken in the light most favorable to the losing party, would not support a judgment in his favor. Traders & General Ins. Co. v. Scott, Tex.Civ.App., 189 S.W.2d 633, error refused, want of merit. In determining if an instructed verdict should be given, the court will disregard conflicts in the testimony and will indulge every intendment reasonably deducible from the evidence in favor of the losing party and against the proposed instructed verdict. Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935. There are many more cases holding substantially the same, including Texas & N. O. R. Co. v. Blake, Tex.Civ. App., 175 S.W.2d 683, error refused, want of merit; McCrory's Stores Corp. v. Murphy, Tex.Civ.App., 164 S.W.2d 735, writ refused, want of merit.

■ Appellee, the beneficiary plaintiff in this case, had the burden to establish that deceased met his death by an accidental injury received while in the course of his employment. The statute provides that "course of employment" (with certain named exceptions) shall "include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee, while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere." Second subdivision 4 of section 1, article 8309, Vernon's Texas Civil Statutes.

It must be conceded that in this case deceased was conclusively shown to be an "employee" of Bradford at the time he received his fatal injuries. He was employed as a truck driver to haul freight when and where his employer directed; that on the day he was killed he had reported to his immediate superintendent that he was ready to go out on one of employer's trucks then parked at the employer's dock; that the superintendent told him to wait a minute until he finished with another employee and he would give deceased the necessary data and instructions concerning his load and destination. That within five or ten minutes thereafter and before the superintendent had advised him that his "clearance" papers were ready, deceased received his fatal injuries on property adjoining that of the employer, which property belonged to and was being operated by the Lind Paper Company in no way connected or related to the business of the employer.

■ As above indicated, appellee alleged in her petition, in substance, that at the time deceased received his injuries he was endeavoring to assist another truck driver in attempting to back his truck up to the Lind dock into the remaining space at that dock fifteen feet in width, so as to get said truck (not one of the employer's) from in front of the employer's dock and prevent that truck driver from running into and damaging the employer's trucks parked at his dock. Appellee now contends, in support of the instructed verdict in her favor, that there was no testimony tending to show that deceased received his injuries while so attempting to assist the driver of the large van or truck to back into the Lind dock, but she pleaded it as a fact and this amounts to a judicial admission against interest and requires no proof at the hands of the opposite party to establish it as a fact. 17 Tex.Jur., sec. 237, pp. 571, 572 and 33 Tex.Jur., sec. 191, pp. 647, 648.

We may therefore safely assume that when deceased was crushed against the Lind dock, he was in the act of assisting the truck driver, Berry, to back his truck into the space at that dock.

It does not necessarily follow, however, that because he was injured on the Lind

property that his injury was not compensable. The statutory quotation above set out refutes that theory.

In view of the fact that the trial court gave the instructed verdict in favor of appellee, the question now before us is: Was it conclusively shown as a matter of fact, as well as of law, that deceased received his injuries while in the course of his employment, as that term is defined in our above quotation from the statute? We think that under the conditions described it became an issue of fact for jury determination as to whether deceased was injured while in the course of his employment.

His duties were those of a truck driver; the testimony is rather meager as to the extent of those duties; apparently it was assumed upon the trial that when it was shown that he was employed to drive a truck for his employer in picking up and delivering freight and merchandise, any person would understand the extent of such duties. It is obvious however that in addition to driving the truck, he was expected to do anything else necessarily connected with and incidental to loading, unloading and handling the contents of his truck. We also think his duties would involve the exercise of reasonable diligence and care to protect and preserve the truck entrusted to him by the employer against harm to the end that he could continue to perform the duties enjoined upon him as driver of the truck. By the instructed verdict the trial court held in effect that deceased was in the course of his employment when injured. Adverting to plaintiff's pleadings, there is no evidence that deceased had been instructed by his employer to assist other drivers to park their trucks, nor that he was following an established custom among the employer's drivers to do so, as pleaded by plaintiff. Nor does it follow as a matter of law that what he was doing when injured was within the course of his employment because it may have been beneficial to his employer's business. It is perceivable that deceased could have undertaken to do many things which would be beneficial to the employer's business and receive an injury while doing so, yet such acts would be entirely outside the scope of his employment for which there would be no compensation in law. We are only concerned here with whether or not he was acting within the scope of his employment when injured. The record before us does not contain any statement made by deceased immediately before nor after he was injured as to why he was attempting to aid Berry in spotting his truck at the Lind dock which could aid the court or jury in determining that matter as a fact.

There are two theories presented by the evidence as to why deceased was attempting to render assistance to Berry in backing his truck into the narrow space, one of which, if found to be true, would support a verdict of injury while in the course of employment, while the other would not.

There is testimony to the effect that when Berry attempted to back his large truck or van into the Lind dock there remained only a vacant space of about fifteen feet between one of the employer's trucks and a car parked at the Lind dock; that traffic was heavy on Commerce Street at that time; that in an effort to back in, Berry had jackknifed his van in a way that his tractor was headed north and was in front of a Bradford truck standing at the south end of his dock; that under such circumstances there was danger of damage to the Bradford truck in that it was liable to be struck by the truck while backing in; that the Bradford truck so endangered was the one that deceased would have driven out on his mission within a few minutes; that although the tractor part of the van was in front of the Bradford truck it could have gotten out with the Berry truck in that position. As above indicated, we believe that if it had been found that deceased was rendering aid to Berry to protect the Bradford truck, which he was to soon drive out, or to prevent his truck from being "penned in" as one witness put it, by the Berry truck, under proper explanations of "course of employment" and applicable special issues, a verdict could have been had which would support a judgment for beneficial compensation.

While upon the other hand there is evidence in the record to the effect that there

was a very friendly and cooperative relationship between Bradford's drivers and those of the Lind Company and that "occasionally" when the driver for one or the other company came in and the docks were crowded, each would aid the other in backing his truck into the narrow spaces. If under proper inquiries from the court the jury had found that deceased was aiding Berry to spot his truck as a friendly gesture from one driver to another, or to reciprocate a previous courtesy by the Lind Company drivers, there would have been evidence to support such a finding; in which event, of course, deceased would not have received his fatal injuries while in the course of his employment and the beneficiary could not have recovered a judgment.

We have pointed out the two theories presented by the evidence as we understand it to illustrate why, under the authorities above cited, the evidence was not all on one side; that the evidence was not of such a character that reasonable minds could not differ as to the conclusions to be reached from it; that disregarding all testimony favorable to the instructed verdict and considering all adverse testimony in the light most favorable to the losing party, the jury might have found differently than it did under the peremptory instruction of the court. In such circumstances the trial court should not have instructed a verdict for the plaintiff (appellee).

Second point of error complains because the court refused to give to the jury its requested peremptory instruction. We must overrule the point because as we have previously pointed out, there was a jury question raised by the evidence and the trial court should not have instructed a verdict in favor of either party.

Point three complains because the court, after having refused to give appellant's requested peremptory instruction, refused to submit to the jury its requested issues, inquiring as to certain facts involved. We think it unnecessary for us to analyze or discuss the particular phraseology of the requested issues for the reason we could afford no material help to the trial court upon another trial; this for the reason, since what we have said about the admissions made by appellee in her trial pleadings, she will, in all probability, amend her pleadings, in which event, other testimony will be required and the issues to be submitted will be different from those necessary at the trial under consideration. The trial court should have submitted appropriate issues and explanatory charges to ascertain if deceased received his injuries while in the course of his employment.

Fourth and fifth points of error complain (a) because the court overruled appellant's plea in abatement, and (b) because during the trial when appellee disclosed by her testimony the names of her sons and daughters, the brothers and sisters of the deceased, appellant moved to withdraw its announcement of ready for trial and to continue the case until said brothers and sisters could be made parties to the suit.

The plea in abatement was filed on October 31, 1945, in which it was disclosed that plaintiff's petition showed that deceased had brothers and sisters and it was claimed that they may have had an interest in the beneficial interests sued for by plaintiff; prayer was that the suit be abated and dismissed and alternatively that the court proceed no further until such time as such brothers and sisters could be made parties.

The original petition is not in the record, but we may assume that it disclosed deceased had brothers and sisters since the plea in abatement filed prior to the filing of the amended petition so shows. By the amended petition it was again alleged that deceased had such brothers and sisters, but there were sufficient allegations made, which if established, would show the brothers and sisters had no interest in the claim. It is obvious that plaintiff cared nothing about them being parties, but it is equally clear that it would have been beneficial to appellant for them to be before the court. We do not hold that they were necessary parties but they were certainly proper parties.

Applicable to both points of abatement and continuance, the court overruled them without assigning any reasons

therefor. It appears to us that there was little or no diligence shown upon the part of appellant to make the brothers and sisters parties.

Judging by the allegations of the date of injury, the notice and final award of the Industrial Accident Board, notice of appeal therefrom and suit, the original petition must have been filed not later than May 19, 1945. The plea in abatement was filed over five months thereafter. Appellant could have procured, by deposition of appellee, after suit was filed and before it filed the plea, all the information given at the trial. The trial court must have considered this lack of diligence in overruling the two pleas. We see no reversible error in the ruling. However, if the rulings did present error, it becomes harmless by our conclusions to reverse and remand this cause. Appellant will have an opportunity to make new parties, if it so desires.

For the error in giving the instructed verdict for appellee, the judgment of the trial court is ordered reversed and the cause remanded for another trial.

McDONALD, Chief Justice (dissenting).

I agree with the majority opinion in so far as it holds that the trial court erred in directing a verdict for plaintiff. I am not in agreement, however, with the holding that the cause should be remanded for another trial. I believe that the trial court should have directed a verdict for defendant, and that we should render the judgment which the trial court should have rendered. Texas Rules of Civil Procedure, rule 434.

Plaintiff alleged that one Roland Berry was attempting to back a truck into the dock on the Lind Paper Company premises; that Ferguson, the deceased employee, was endeavoring to assist Berry in backing said truck; and that in so doing Ferguson was performing duties incident to and as a necessary part of his employment and was furthering the interest of his employer. As pointed out in the majority opinion, Berry was not an employee of, nor was his truck owned by, Ferguson's employer. But it appears to me from the record, and from her brief and written argu-

ment in this court, that plaintiff has abandoned this theory of recovery.

In her motion for instructed verdict, in presenting the grounds therefor, plaintiff made no claim that Ferguson was injured while assisting the truck which was backing up to the Lind Paper Company dock. After reciting that Ferguson was waiting to leave with his truck, she specifically alleged in this motion as follows:

"That inasmuch as he was either upon, touching, or within a very few inches of his employers' property during working hours and immediately adjacent to his truck situated only a few feet away at a time when he was under specific orders to carry out a specific mission for his employer, it is to be presumed as a matter of law that he was engaged in the furtherance of his master's work and in the performance of his duties in the regular course and scope of his employment at the time he was fatally injured."

The following recital appears in the judgment:

" * * * and the court being of the opinion that the plaintiff's motion for a directed verdict was well taken, in all things sustained the same * * *."

In its brief filed in this court defendant contends that the evidence shows without dispute that the deceased did not receive his injuries in the course of his employment, but that he had turned aside from his employment in order to assist, as a volunteer, the driver of the truck which was backing up to the Lind Paper Company dock. Defendant further contends that plaintiff's petition constitutes a judicial admission that the deceased was assisting the driver of the truck in question at the time he met his death.

In her reply brief filed in this court, plaintiff urgently insists that there is no evidence to show that the deceased employee was directing the movements of the truck on the Lind Paper Company property. To quote, " * * * there is no testimony, by inference or otherwise, that Ferguson was directing the movement of the truck at the time he sustained his fatal injury." She also says:

"Plaintiff's motion for instructed verdict was based upon the proposition that the undisputed evidence disclosed that Ferguson sustained his injury while in the course of his employment for the reason that he had reported for his final orders and had been specifically instructed by his employer to wait until he (the superior) had finished checking another truck and while so waiting he received his injury."

The court authorities cited in support of her contention are cases in which the employee had to wait, for some reason or other, until he could continue with his work, and received injuries while waiting.

In another statement in her brief plaintiff declares:

" * * * the only conclusion possible from the entire testimony is that Ferguson was on his way to report to Mr. Ivic after receiving specific instructions to wait and therefore, received his injury while in the course of his employment. The testimony is, therefore, so conclusive that reasonable minds could not differ as to its effect."

In a written argument filed in this court after submission of the case and after the case had been argued orally, plaintiff still urgently denies that Ferguson was killed while assisting the driver · of the truck which was backing up to the Lind Paper Company dock. She contends that her pleadings do not constitute a judicial admission to that effect. In this written argument she says:

"Plaintiff calls this Honorable Court's attention to the fact that there is absolutely no competent testimony to the effect that the deceased was directing the movements of the truck at the time he sustained his fatal injuries. * * * there is no testimony in support of defendant's contention that the deceased was directing the movements of the truck and in doing so had departed from the scope of his employment."

Plaintiff's entire argument in this court in support of the directed verdict in her favor may well be summarized by quoting the following from her written argument above mentioned:

"Furthermore, a presumption exists that an employee is killed while in the course of his employment where the evidence disclos-es that the accident occurred during working hours and at a place where the employee might reasonably be expected to be in the performance of his duties. As the defendant did not, in the case at bar, offer any testimony in order to overcome such a presumption, it is conclusively presumed that the deceased sustained his injuries while waiting, pursuant to instructions of his superior. In support of the foregoing statement plaintiff refers this Honorable Court to the annotation appearing in 120 A.L.R. page 683."

The rule on which plaintiff relies is thus stated in the cited annotation, at page 684:

"It is generally held that when it is shown that an employee was found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, in the absence of evidence that he was not engaged in his master's business, there is a presumption that the accident arose out of and in the course of the employment within the meaning of the compensation acts."

The majority opinion holds that the allegations of plaintiff's petition are sufficient to show that Ferguson was directing the movements of the truck on the adjoining premises when he was injured. The allegations may be taken as an admission against interest by way of defeating plaintiff's recovery, but they cannot supply the lack of proof to support a recovery for plaintiff. It may be questioned whether we should remand the case to give plaintiff opportunity to recover upon a theory which she appears to reject in this court.

Some mention should be made of the ground of recovery which plaintiff declares in her brief and written argument does have support in the evidence. That ground is that Ferguson was awaiting instructions from his employer before leaving with his truck, and that, while waiting, he was injured at a place so near· his employer's premises that it must be presumed as a matter of law that he was injured in the course of his employment.

The proof shows without dispute that he was not on his employer's premises, but, on the contrary, was on the premises of

another, and was in what proved to be a dangerous place. If we accept appellee's version of the evidence, Ferguson's presence on the Lind Paper Company premises is left completely unexplained, with not a circumstance shown by the evidence from which there could reasonably be drawn any inference that he was there in the performance of any duty of his employment. Even though in a proper case we might infer that an employee had been injured in the course of his employment where the injury was incurred during regular working hours and at a place where the employee had a right to be, we can see no good reason to extend the rule allowing such an inference to a case where the employee was injured off the employer's premises, simply because the place of injury was near the employer's premises. If appellee's version of the evidence is correct, then we have no way of knowing, and nothing from which we can infer a reason, why Ferguson was on the Lind premises at the time he was injured. We might speculate endlessly, but still we would not know. Ferguson might have been on the Lind premises for the purpose of guiding the truck driven by Berry, he might have been doing this in furtherance of the business of Ferguson's employer, he might merely have been acting as a volunteer, for Berry's benefit, he might merely have been crossing the Lind premises for some purpose not connected with his employer's business, he might have been visiting the employees of the Lind Paper Company— we simply do not know from the evidence why he was in front of the Lind dock. The following rule of circumstantial evidence is applicable:

"To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute the basis of a legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit of a purely speculative conclusion. The circumstances relied on must be of such a character as to be reasonably satisfactory and convincing, or, as has been said, sufficient reasonably to produce belief of the existence of the fact which is sought to be shown by them. At all events they must not be equally consistent with the nonexistence of the ultimate fact." 17 Tex.Jur., p. 908.

At page 692, of the annotation in 120 A.L.R., are cited cases where the presumption aforesaid was not justified by the facts proved.

If we conclude that the proof, coupled with the admission contained in plaintiff's pleadings, shows that Ferguson was endeavoring to assist Berry in backing the truck on the Lind premises, I can find no evidence of probative value from which it may reasonably be inferred that he was doing so in the performance of the duties of his employment. Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238. There may be a vague suggestion in the testimony that Ferguson was trying to help maneuver the truck driven by Berry into a position where it would not bar the exit of the truck which Ferguson expected to drive away from the dock, but a conclusion that he was doing so must be inferred only from the fact that the truck driven by Berry was, as it was backing up to the dock, in a position where it barred the exit of Ferguson's truck. I can find no testimony showing that the Berry truck, when it was finally backed up to the Lind dock, was in such position as to leave the way clear for Ferguson's truck to leave. There is no direct evidence that Ferguson was helping Berry in order to keep the Berry truck from backing into Ferguson's truck, or in order to leave the way clear for Ferguson to leave. We must either engage in speculation, or pile inference upon inference, to reach a conclusion that Ferguson was helping Berry in order to carry out the business of Ferguson's employer. Nor, as I read the record, is there any evidence of probative value showing that Ferguson was instructed or authorized by his employer to assist trucks driving in on the Lind Paper Company premises.

In my opinion, plaintiff failed to make out a case of liability, and there is nothing in the record to indicate that the proof would be different on another trial.