Bob MARSHALL, dba Bob Marshall Motors, Appellant,

v.

S. S. McCALL et al., Appellees.

No. 11240.

Court of Civil Appeals of Texas.

Austin.

Dec. 2, 1964.

Rehearing Denied Jan. 6, 1965.

**468**

E. B. Fuller, Mitchell & Gilbert, Arthur Mitchell, Phillip Gilbert (on appeal only), Austin, for appellant.

Gay & Meyers, Brown, Sparks & Erwin, Will G. Barber, Austin, for appellees.

HUGHES, Justice.

This suit was originally by Bob Marshall, dba Bob Marshall Motors, appellant, against S. S. McCall, George S. McCall and H. T. Hibler, doing an insurance business under the name of McCall and Hibler Company, for their alleged failure to properly write, endorse and change a fire insurance policy issued by Hartford Fire Insurance to appellant, and "in general their failure to so handle (appellants) insurance business as regards the insurance policy in question here as to cause him loss."

By what is dubiously denominated a supplemental petition appellant named Hartford Fire Insurance Company a party defendant alleging the issuance of a fire insurance policy by it to appellant and further alleging that, "on January 15, 1963, an endorsement was issued adding an additional location * * * effective at 12:01 a. m. on January 15, 1963, which was a time prior to the fire which which destroyed" or damaged appellant's automobiles.

Hartford denied this allegation, although admitting that appellant sustained a fire loss prior to 7 p. m. on January 15, 1963.

When all parties rested the trial court granted the motion of Hartford that the jury be instructed to return a verdict in its favor. We will dispose of this portion of the appeal first.

There is no evidence in the record to sustain appellant's allegation that the policy issued by Hartford had been endorsed by adding an additional location effective at 12:01 a. m., January 15, 1963, a time prior to the fire causing appellant's loss.

█ Appellant did not plead Hartford's liability generally under the policy issued by it but limited his theory of recovery to an endorsement on the policy which would include as covered the premises where the fire occurred.

Appellant now contends that without such endorsement his loss is covered by the policy as originally issued.

We believe that appellant is precluded by his pleading from now contending that his suit was based upon the original policy independent of any endorsement. We quote the rule which supports this conclusion:

"The [plaintiffs] were, and are, bound by their pleadings. A plaintiff can recover, if at all, only on the cause of action pleaded by him. The office of a pleading is to define the issues to be tried. It is certainly the general rule that an admission in a pleading, on which a party goes to trial, is taken

against him. It is the further rule that the pleadings and the evidence must coincide. Finally, it is the rule that parties are restricted in the appellate court to the theory on which the case was tried in the lower court." Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238.

The trial court properly instructed a verdict in favor of Hartford unless appellant has admitted, or there is admissible evidence that appellant has confessed, liability to the extent of $5000.00.

█ Mr. James Laney, an adjuster for and employe of Hartford was quoted by appellant as saying:

"A Mr. Laney came up and said, 'Bob, I hate to tell you this, but I have been instructed by Hartford to offer you $5,000 on this loss, and if I were you—I am not supposed to be saying this because I am working for them, but if I were you I would not accept it, because there is a nigger in the woodpile somewhere, and I think you have got agent trouble instead of company trouble,' and he said, 'If I were you I wouldn't take it because I feel that after considering the thing, they will come on through with it for you.'

* * * * * *

"Q Did he indicate to you that they were taking the position that this was an offer for all the damage specifically, or would it be fair to say that he was discussing this specific $5,000 provision?

"A He said that was what was provided in the policy and that was all that he was authorized to pay."

This testimony was excluded.

Hartford does not brief this contention. Appellant relies upon Sec. 1142, McCormick

and Ray, Texas Law of Evidence, as authority for the admission of this evidence. The applicable rule is there stated as follows:

"An offer to compromise or settle a disputed claim would seem to have relevance as indicating the value the offering party placed upon the claim. Our courts uniformly have held, however, that such offers are not relevant on the issue of the validity of the claim and are not receivable as an admission.

* * * * * *

"Independent admissions of liability are admissible in evidence even though coupled with an offer of compromise. But this rule does not apply where the admission is so tied up with the offer that they cannot be separated so as to disclose clearly what the offeror had in mind, that is, whether he is stating his belief as to a fact, or whether he is merely making a concession for the sake of negotiation. Whether a particular statement or offer is an independent admission or an offer of compromise appears to be a question for the court."

We do not believe that this testimony was so clearly an admission of liability as distinguished from an offer of compromise that the trial court was deprived of his discretion in determining its admissibility, and we sustain his ruling in this respect.

We affirm the judgment of the trial court in exonerating Hartford from liability upon the cause of action asserted against it herein by appellant.

The cause of action asserted against McCall and Hibler was, submitted to a jury which returned these findings:

1. Before January 15, 1963, appellant told Mr. Hibler that he had acquired a new location for use in his automobile business.

2. Appellant did not, before January 15, 1963, request Mr. Hibler to include the new location acquired for use in his automobile

business in the insurance policy involved in this suit as an additional named location.

Other issues were submitted to the jury and, except as to damages, were not answered.

Upon this verdict, McCall and Hibler successfully moved for judgment.

One of the issues submitted to but not answered by the jury was the following issue:

"Do you find from a preponderance of the evidence that defendant Hibler's failure, after such notice, if any you have found, to secure for plaintiff Marshall insurance covering automobiles when at the new location was negligence?"

The McCall and Hibler Company had for about seven years, except for a few months prior to writing the policy in suit, written virtually all of the property insurance carried by appellant. Mr. Marshall testified:

"Q Did Mr. Hibler advise you as to—was he the only one that advised you as to your insurance problems in any agency, except when you got together with Mr. Shackelford?

"A He was the only one besides Mr. Shackelford, yes. And I taken his advice because I felt that he had taken care of me in the past and he would continue to take care of me.

*   *   *   *   *   *

"Q Now, Mr. Marshall, in all of your prior dealings with Mr. Hibler he had been a good and faithful agent, had he not?

"A I would say Mr. Hibler—I had all the confidence in the world in him. I would not have had my insurance with him if I had not had, and I taken him at his word

on everything, and that is what I did on this policy.

*   *   *   *   *   *

"Q Anyway, you did request certain coverage and he provided it, didn't he?

"A I never did request any certain coverages, except on the total amount of coverages. The rest of the coverages he suggested to me that I take them.

"Q All right. Well, he could not have forced them on you?

"A Do what?

"Q He could not have forced them on you?

"A Well, he didn't have to, because I was depending on him."

Mr. Hibler testified regarding a deposition given by him previously:

" 'Do I understand you to say that had you known that he (appellant) had the location and that you felt that then your duty would have been to immediately go out and inspect the location for the benefit of your company?' And your answer was, 'Yes' * * * A. Yes. I still answer yes. Q. 'And if the location was satisfactory in your opinion, then would you have endorsed the policy as another location?' Your answer was, 'Well, I would have told my company the condition of the location and would have asked them to endorse it.' Is that correct? A. That is correct. I would still do that today, yes sir."

Mr. Hibler further testified:

"Q * * * Knowing his business and knowing that he had operated at Fifth and West Avenue * * had you learned in any capacity that Mr. Marshall had a place of business somewhere else, what would you have done * * *?

"A  If he had told me that he had a new business over here, the very first thing I would have done * * * I would go to inspect the premises to see what kind of premises he had newly acquired. * * *

"Q  And you would have done this even though you knew he was out of town and you had learned about it in the newspaper or something?

"A  Oh, no, no, I wouldn't just take for granted something.

"Q  In other words, you wouldn't wait for Mr. Marshall to ask you specifically to do it?

"A  Well, yes. He would have to say, 'I am going to buy this building,' or 'I am going to rent this building,' and he would say, 'I am going to want coverage on it when I occupy it.' I would get up and go and look at it.

"Q  Well, what you are saying is now that it would be necessary for him to tell you he wanted insurance before you would do anything?

"A  Well, no, not before I would do anything. But before I wrote it, I would be sure that I knew what I was doing. * * *

"Q  Are you telling this jury * * * that if he told you about this piece of property that you would do nothing unless he said, 'Hibler, I want insurance?' Would he have to ask you specifically to go down and look at it?

"A  No * * * I would say, 'Now, do you want me to cover you down there for some insurance,' and he would say, 'X-dollars.' Then I would go back, and I would cover him and bind him for X-dollars.

\*      \*      \*      \*      \*      \*

"Q  My question has been over and over, Mr. Hibler, that if Mr. Marshall * * * just told you about the location and didn't say, 'I want insurance,' and just kept his mouth shut on insurance, what would you have done.

"A  I would have said, 'Mr. Marshall, how much do you want me to cover you at that location?' That would have been the first thing I would have asked him.

"Q  All right. And you would not have taken it upon yourself to have gone down there without your turning to him and asking?

"A  Why, certainly not; and if he wanted me to insure him, I would want to know what I was insuring him for."

Mr. Hibler also testified that upon being notified by Mr. Marshall of the fire he, without being requested by Mr. Marshall to do so, placed $20,000.00 insurance on the car salvage which may have been in the fire damaged building saying, "I would not have been a prudent agent unless I had done that."

Referring back to the time when appellant changed insurance agents and to the time when, appellant having become dissatisfied with the change, gave his business back to McCall and Hibler Company, we quote the testimony of appellant:

"A  I called Mr. Hibler and I told him, I said, 'Them people misrepresented this policy to me, and we have had very good experiences in the past with you, and if you want my insurance back, I will be glad to talk to you about it. If you don't, I am going to call somebody else.' And he said, 'We sure would like to have it back,'·

and he come down and we made an agreement, and went back—he went back on it with Hartford, and at that time I told him I wanted it exactly like my old policy that he had with the exception I wanted a fixed amount of $35,000 on a total loss, on the total amount of the loss, and he said, 'Up till this year we couldn't write you that type of insurance, but we can now.' "

It is to be noted that appellant's insurance had been for the principal sum of $50,000.00, thus indicating that appellant, not the agent, conducted his own affairs.

■ The question presented is whether or not any evidence, more than a scintilla, existed from which the jury could have found that the McCall and Hibler Company was under obligation to insure appellant's cars at the South Congress location.

We have wrestled with this record and have, with more than normal lucubration, reached the conclusion that some such evidence exists.

■ McCall and Hibler Company recognizes the rule that an insurance agent may so conduct himself as to be liable for a failure to insure. We quote from its brief:

"* * * He (the agent) can, of course, so conduct himself that he will become liable for a failure to insure—as, for example, if he has undertaken to provide his customer with all the insurance that may be required for his customer's business and other activities, or if there has been such a course of dealing over a long period of time that the customer justifiably believes that the agent will take care of his insurance needs."

We also quote the following note contained in such brief:

"The jury found in response to Special Issue No. 1 that appellant told

Mr. Hibler 'that he had acquired a new location for use in plaintiff Marshall's automobile business.' There was no finding that Mr. Hibler was informed of the address of the new location, and Mr. Hibler denied that such information was given him."

It is true, there was no such finding, but it is also true that appellant testified, "I did tell him (Mr. Hibler) the correct address in mid-December. I told him 510 South Congress."

We believe that this testimony taken in connection with the admissions made by Mr. Hibler regarding his duties and obligations toward appellant are sufficient to raise an issue.

This evidence is augmented by the act of Mr. Hibler in procuring insurance for appellant after the fire without any request for such insurance being made. Appellant was billed for this insurance, and paid for it. It is true that Mr. Hibler explains this assumption of authority, which is contrary to the position he now takes, as being due to excitement and the stress of circumstances then prevailing. It is for the jury to weigh this evidence. A jury being present, neither the trial court nor this Court is originally authorized to perform this function.

Since this case is being reversed as to McCall and Hibler Company we note that there is some contrariety of opinion concerning the admissibility of acts of an agent or assumed agent for the purpose of showing his authority committed subsequent to the transaction in question. See 2 Tex.Jur., p. 720, Mills v. Berla, Tex.Civ. App., 23 S.W. 910, Adams (D. H.) and Company v. Texas Pacific Coal & Oil Co., 275 S.W. 1100, Texas Civil Appeals opinion with no writ history. Contra, 2 C.J.S. Agency § 23, p. 1049, Bartley v. Rhodes, 33 S.W. 604, Texas Civ.App., no writ history.

■ The conduct of Mr. Hibler in procuring unrequested insurance for appellant

is so closely related to the transaction in issue that we would hold evidence of it admissible.

The judgment of the trial court is affirmed in part and in part reversed and remanded.

Affirmed in part and in part reversed and remanded.