Julia Shay JECKER, Petitioner,

v.

WESTERN ALLIANCE INSURANCE
COMPANY, Respondent.

No. A–9359.

Supreme Court of Texas.

July 10, 1963.

Rehearing Denied July 31, 1963.

Huson & Bissett, Refugio, Keys, Russell, Keys & Watson, Corpus Christi, Ben A. Donnell, Corpus Christi, for petitioner.

Guittard & Henderson, Victoria, Harry F. Maddin, Victoria, for respondent.

CALVERT, Chief Justice.

Lawrence Jecker was killed in an automobile accident. Based on jury findings that at the time of the accident Jecker was in the course of his employment with Bay Chevrolet, Inc., and was not intoxicated, and a further finding that Mrs. Julia Shay Jecker, his widow, would suffer manifest hardship if compensation was not paid in a lump sum, the trial court rendered judgment against Western Alliance Insurance Company, Bay Chevrolet's insurer, for Workmen's Compensation benefits to be paid in a lump sum. The Court of Civil Appeals reversed the trial court's judgment and rendered judgment that the plaintiff take nothing. 362 S.W.2d 137.

We reverse the judgment of the Court of Civil Appeals and remand the case to that court for further consideration.

The Court of Civil Appeals expressly sustained points of error presented by Western Alliance asserting that there is no evidence to support the jury's finding that Jecker was in the course of his employment at the time of his fatal accident, and that the finding is so contrary to the overwhelming preponderance of the evidence as to be manifestly unjust. These are the principal holdings which we have for review.

Inasmuch as Jecker suffered his fatal injuries while traveling on a public highway, whether he was in the course of his employment at the time is measured and limited by Secs. 1 and 1b of Art. 8309, Vernon's Ann.

Civ.St.[1] Sec. 1, after eliminating injuries caused under certain circumstances, provides that the term "injury sustained in the course of employment" shall "include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere." Sec. 1b, added in 1957, reads:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment. Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip."

Special Issue No. 1 inquired whether Jecker was in the course of his employment at the time of his fatal accident. In connection with the special issue, the court gave an instruction defining "in the course of his employment" in the language of Secs. 1 and 1b of Art. 8309 as that language relates to the facts in the case. The jury

[1] All Article references are to Vernon's Annotated Texas Civil Statutes.

was instructed that "in the course of his employment" meant "originating in ·the work, business, trade or profession of Bay Chevrolet, Incorporated, and in the furtherance of its affairs or business." The instruction then continued as follows:

"However, an employee, while travelling on the highway in an automobile, is not considered as being in the course of his employment unless the transportation is paid for by the employer or unless the employee is directed in his employment to proceed from one place to another place."

Finally, the instruction advised the jury that travel in furtherance of the business of the employer could not be the basis of a claim that the death occurred in the course of employment if the travel was also in furtherance of personal or private affairs, unless the trip would have been made had there been no personal or private affairs to be furthered and unless the trip would not have been made had there been no business of the employer to be furthered.

◼ The holdings of the Court of Civil Appeals that there is no evidence to support the jury's finding and that such finding is contrary to the weight and preponderance of the evidence, appears to be based upon an erroneous concept of applicable law and an erroneous construction of the trial court's instruction. The court, citing American General Ins. Co. v. Coleman, 157 Tex. 377, 303 S.W.2d 370, 374, rested its conclusion on the general rule that an injury incurred in the use of public streets and highways *in going to and returning from the place of employment* is not a compensable injury because not incurred in the course of the employment as required by Sec. 1 of Art. 8309. There are exceptions to that general rule, also set out in Coleman, but the Court of Civil Appeals was of the opinion that the facts of this case did not bring it within any of the exceptions. It construed the exceptions as being limited to instances in which the employer furnishes transportation to the employee, or pays another **to**

transport him, or directs him to perform a "special mission" requiring travel on the streets or highways.

The rule and the exceptions mentioned in Coleman should be interpreted in the factual context with which the Court was dealing. In that case the question to be decided was whether a workman whose employment had terminated and who was injured while traveling on a public highway in returning to the city in which he resided was injured in the course of his employment. In deciding the question, we applied the rule or test, and *the exceptions, used to determine whether* a workman who has completed his work for the day at his place of employment and is injured while traveling on the streets or highways in returning to his place of residence is injured in the course of his employment. The general rule is that he is not. The rationale of the rule is that injury incurred in such travel does not arise out of the employment. Texas General Indemnity Co. v. Bottom, Tex.Sup., 365 S.W.2d 350.

◼ The general rule is, in reality, even broader than we had occasion to state it in Coleman. It is that injuries incurred by a workman while traveling on public streets and highways are not incurred in the course of employment. But there are exceptions to that rule. One of the exceptions is when injury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract. Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192; Safety Casualty Co. v. Wright, 138 Tex. 492, 160 S.W.2d 238; Jones v. Texas Indemnity Co., Tex.Civ.App., 223 S.W.2d 286, writ refused; Federal Underwriters Exchange v. Lehers, 132 Tex. 140, 120 S.W.2d 791. As a matter of fact, we recognized this exception in Coleman by our quotation from Associated Indemnity Co. v. Bush, 5th Cir., 201 F.2d 843. The rationale of it is that since the workman's employment requires him to subject himself to the risks and hazards of streets and highways, his injuries grow out of his employ-

ment. Smith v. Texas Employers' Ins. Ass'n, supra. The exception was well established before the adoption of Sec. 1b of Art. 8309 by the Legislature, and it must be assumed that the section was enacted with full knowledge of it.

■ Was the exception abolished by Sec. 1b of Art. 8309? We think not. We have recently recognized in Texas General Indemnity Co. v. Bottom, Tex.Sup., 365 S.W. 2d 350, 353, that the Legislature intended by the enactment of Sec. 1b "to circumscribe· the probative effect that might be given to the means of transportation or the purpose of the journey rather than to enlarge the definition [of "injury sustained in the course of employment"] found in Section 1." But the Legislature surely did not intend to provide that an employee whose employment requires him to travel at his own expense in his own automobile on streets and highways, either constantly or intermittently, should be denied compensation if accidently injured while thus exposed to risks growing out of his employment. Any such holding would be wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own automobiles in their work, and would be a strict rather than a liberal interpretation of the Workmen's Compensation Act.

■ It is to be noted that one of the exceptions to the provision in Sec. 1b that "transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment" is when "the employee is directed in his employment to proceed from one place to another." We construe this exception to include those situations in which the employee proceeds from one place to another under the terms of an employment which expressly or impliedly requires that he do so to discharge the duties of his employment. Having thus construed the statute, we give the same meaning to that part of the trial court's instruction which advised the jury that "an employee, while

travelling on the highway in an automobile, is not considered as being in the course of his employment * * * unless the employee is directed in his employment to proceed from one place to another place."

■ Our determination of whether there is in the record evidence of probative force that Jecker was in the course of his employment at the time of his fatal accident is made under governing law as announced above. There is evidence that he was in the course of his employment if there is evidence that (1) he was traveling on the highway pursuant to express or implied provisions of his employment contract that he do so in performance of his duties, and (2) that he would have made the trip had there been no personal or private affairs to be furthered and would not have made it had there been no business of his employer to be furthered.

Bay Chevrolet, Inc., is a family-owned corporation with Charles Luther, owner of ninety per cent of its stock, as president and manager. It operates an automobile business and an electrical appliance business, about four blocks apart, in Palacios. It has a General Motors' franchise for electrical appliances, including Frigidaire ranges.

Jecker had been in the employ of Bay Chevrolet Inc. for about eleven months at the time of his death. He was in charge of sales, delivery and servicing of appliances, was paid a salary of $200.00 per month, plus a commission or bonus, and, with the aid of Luther's sister who performed office duties, operated the appliance business under loose supervision of Luther: He worked six days a week. His regular hours were from eight to five, but the arrangement of his work schedule was left largely to him. No mileage limitation was put on the area in which he could sell appliances by either general instructions or the franchise, but his normal trade area was within a radius of twenty miles of Palacios, and he understood that. He once

delivered and installed a washing machine, at Luther's request, in the apartment of Luther's son in Austin, a distance of approximately one hundred and sixty miles.

In March of 1958, Jecker, with Luther's permission and approval, sold a Frigidaire range to Wallace Shay, Mrs. Jecker's nephew. Shay lived in Refugio, some eighty miles distant from Palacios. Jecker delivered and installed the range, making the trip in a company truck. The range was new. Under Frigidaire's written warranty, the manufacturer agrees that for one year it "will, at its election, repair or replace without cost to the owner or user, through an authorized servicing dealer or f. o. b. the factory, any part found by the Manufacturer to be defective * * *."

On Tuesday, September 16, 1958, Jecker went to Refugio to the home of Wallace Shay where he, with the aid of Shay, replaced a broken glass control panel and a surface burner of Shay's range with new parts purchased and furnished by Bay Chevrolet, Inc. While traveling on a public highway on his return trip to Palacios, his automobile collided with another automobile at about 7:30 p. m. and he suffered injuries from which he died.

The facts detailed to this point may be accepted as undisputed. Western Alliance's assertion that Jecker was not injured in the course of his employment rests on testimony of Charles Luther. Luther testified that while the range was sold by Jecker to Shay with his knowledge and consent, it was sold at a reduced price and with the understanding between him and Jecker that Bay Chevrolet would replace any defective parts but would not pay installation or servicing charges; that Bay Chevrolet had replaced a broken glass panel on the range in June but had done so as a matter of company policy and not under or by virtue of a warranty; that he was aware that Shay had communicated with Jecker at a later date with respect to replacing a broken glass control panel and a surface unit switch, and the company ordered replacement parts; that the parts were received on Tuesday, September 9, and Jecker told him that he would be happy to go to Refugio and install the parts on his own time; that Jecker had planned to go on Sunday, September 14th, but told him later (probably on Monday, 15th,) that he did not go on Sunday, but wanted to go to attend to some personal business and would take the new parts for the range with him and replace the broken or defective parts on a day off; that he said, "Okay, go ahead"; that he knew Jecker was going to make the trip to Refugio, but he did not know on what day he was going and did not authorize him to go on company time to replace the broken or defective parts of the range.

Luther's testimony thus far detailed indicates that Jecker's trip to Refugio was not made for the purpose of performing duties imposed on him by express or implied terms of his employment. But there is other evidence in the record tending to prove that it was.

Luther testified that "it was Mr. Jecker's job to service any appliances that was [sic] sold through Bay Chevrolet Co.," and further as follows:

"Any new merchandise you sell you have to service it for one year or you have to pay into Frigidaire Division an amount agreed upon and selected by Frigidaire Division in order to cover normal service within warranty. If you sold an item at retail that was considered to be covered by service, then you would naturally have to service it even if you sold it in Alaska or you would have to make arrangements with Frigidaire Division to have it serviced by a dealer closer to the place of the user."

He testified positively that the range sold to Shay was new and carried a one-year warranty.

There is other evidence that the range was sold with full warranty and that Luth-

er recognized that Bay Chevrolet was obligated to replace defective parts and to furnish necessary labor or service. Shay testified that when the range was delivered, he was given a booklet containing the written warranty. The glass panel was broken when the stove was first installed or shortly thereafter, and Jecker, with knowledge and approval of Luther, made a trip to Refugio in June to install a new one furnished without charge by Bay Chevrolet. Bay Chevrolet paid the gasoline expense of the trip. Work orders were prepared by Bay Chevrolet for replacement of the glass panel in June and for the work done on September 16th. On the back of the work order for September 16th is a notation of items charged out to the particular job as white lacquer, switch, surface unit, and glass control panel, and their cost to Bay Chevrolet; no charge is shown for labor. In the space for billing in the work orders for both the June and September work appears the word "warranty".

■ It is our duty, as it was the duty of the Court of Civil Appeals, to view the evidence and the reasonable inferences therefrom most favorably in support of the jury's finding. Under that rule, we are satisfied that there is in the record evidence of probative force that Jecker's trip to Refugio on the date of his fatal accident was in the furtherance of his employer's business and in the performance of duties imposed by his contract of employment. We are further satisfied that there is evidence of probative force that he would have made the trip had there been no personal or private affairs to be furthered and would not have made it had there been no business of his employer to be furthered.

The jury was not required to believe Luther's testimony that Jecker had agreed that the manufacturer's warranty would not apply to the range sold to Shay; there is strong evidence, including Luther's own testimony, that it did. Neither was the jury required to believe that Jecker told Luther that he had some personal business in Re-

fugio and would make the trip and replace the defective or broken parts of the range on his own time. He did, of course, visit with his wife's relatives while in their home. The evidence also reflects that after leaving the Shay home he visited a recreation club in Refugio and loitered there for some time, drinking beer and playing pool, before beginning the return trip to Palacios. But the evidence is far from conclusive that visiting his wife's relatives and visiting the recreation club were the main or even motivating factors in the making of the trip. There is no evidence that Jecker attended to any personal business on the trip.

Under governing law as announced herein, we hold that there is in the record evidence of probative force supporting the jury's finding that Jecker was in the course of his employment when he was injured. There is no claim that he turned aside from the shortest route on the return trip to Palacios to serve some purpose of his own.

It becomes unnecessary for us to decide whether payment by an employer for gasoline used by a workman in going from his place of residence to his place of work to begin his work day and in returning to his residence at the end of the working day is transportation "paid for by the employer" within the meaning of Sec. 1b, Art. 8309 and the Court's instruction in this case.

Respondent had before the Court of Civil Appeals seven points of error. The two points sustained by that Court were points two and three. In virtue of sustaining point two, the Court reversed the judgment of the trial court and rendered a take-nothing judgment. It becomes our duty to consider the other points of error which, if sustained, would result in an affirmance of the judgment of the Court of Civil Appeals.

Under the provisions of Sec. 1, Art. 8309, injuries received while in a state of intoxication are not sustained in the course of employment. A defense urged to this suit was that Jecker was in a state of intoxica-

tion. at the time of his injury. A special issue was submitted on that defense and the jury answered. that Jecker was not in a state of intoxication.

 Respondent's point six asserts there is no evidence to support the finding, meaning, we assume, that the evidence shows conclusively that Jecker was in a state of intoxication. From a review of the evidence, we conclude that the Court of Civil Appeals correctly overruled this point.

Respondent's points one and four would, if sustained, result in an alteration of the judgment of the Court of Civil Appeals. Point one asserts error in. the refusal of the trial court to define "state of intoxi-. cation" in its charge. The Court of Civil Appeals overruled the point. If this point were sustained, the judgment of the Court of Civil Appeals would be .reversed and the cause remanded to the trial court for retrial. Point four asserts there is no evidence to support the jury's finding that Mrs. Jecker will suffer manifest hardship if the compensation is not paid in a lump sum. The Court of Civil Appeals found it unnecessary to pass on the point. If this point were sustained, the judgment of the Court of Civil Appeals would be reversed and the judgment of the trial court modified. Since neither of these complaints were brought to this Court by cross-point, they cannot be considered. 21 Texas Bar Journal 113.

Since the Court of Civil Appeals sustained the point of error asserting that the jury's finding that Jecker was injured in the course of his employment is contrary to the overwhelming preponderance of the evidence under an erroneous concept of the law, the cause will be remanded to that Court for further consideration of the question rather than to the trial court for retrial. Corzelius v. Oliver, 148 Tex. 76, 220 S.W.2d 632, 635; Puryear v. Porter, 153 Tex. 82, 262 S.W.2d 933, 264 S.W.2d 689. If the Court should overrule that point, it will then consider and determine respondent's point five asserting that the finding that Mrs. Jecker will suffer manifest hard-

ship if compensation is not paid in a lump sum is contrary to the weight and preponderance of the evidence.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that Court for further consideration as herein indicated.