**TEXAS CASUALTY INSURANCE COM-
PANY, Appellant,**

v.

**Mary Lou GONCE et al., Appellees.**

**No. 3980.**

Court of Civil Appeals of Texas.

Eastland.

May 7, 1965.

Rehearing Denied May 21, 1965.

Turner & Seaberry, Eastland, for appellant.

Webb & Stokes, San Angelo, G. A. Day, Brownwood, Yates & Yates, Abilene, for appellees.

WALTER, Justice.

Mary Lou Gonce, individually and as next friend for her three minor children, and Ollie Gonce, as next friend for a minor child of the deceased by a previous marriage, recovered a judgment against Texas Casualty Insurance Company for death benefits under the Workmen's Compensation Act on account of the death of Jerry G. Gonce. The insurance company has appealed.

The jury found that Gonce at the time of his death was an employee of Ford Brothers and that he was in the course of his employment and that he was not an independent contractor. The appellant presents no evidence and insufficient evidence points and contends that the jury findings are against the preponderance of the evidence. It also contends the court erred in overruling its objections to the definitions of employee and independent contractor and in permitting appellee to ask leading questions.

Mary Lou Gonce testified substantially as follows: My husband Jerry Garland Gonce was killed in an automobile accident August 17, 1963, while we were returning from Dallas. He had been employed by Ford Brothers Aluminum Body Works of San Angelo about nine months. My husband came home from work Friday and informed me that he was delivering a truck for his company to a baker in Dallas and wanted me to drive him to the service station and get the truck. We had no personal business of any kind in Dallas. We had no reason to make the trip except to deliver the truck on behalf of the company. When we started to leave on Saturday morning, the truck wouldn't start. I pushed the truck to a filling station where my husband used the telephone and then I pushed him to the Bass-Jarmon Ford Company's place of business. My husband's boss, Ford, came to the Ford house, and he and my husband had a conversation. We bent the back bumper of the truck when I was pushing it. Ford told my husband to take the truck back to the body shop and fix it before we left for Dallas. My husband followed his instructions. I heard Ford give my husband some instructions on how to straighten the bumper. He then told my husband to get some aluminum paint and paint it. About 10:00 o'clock Ford said everything was ready for our trip to Dallas. Ford told me he hoped we would have a nice trip. We had some written instructions on how to get to the place where we were to deliver the truck. I studied them with my husband but we got lost and inquired at a filling station and finally de-

livered the truck to the bakery. On the return trip my husband drove from Dallas to the first little town out of Dallas and then I took over and continued to drive until we had the accident. I had been up since 5:00 o'clock that morning and my husband didn't go to bed Friday night. He went to sleep as soon as I started driving. Near Brownwood, about 10:00 o'clock at night I went to sleep, the car ran off the road and my husband was killed.

Wade O. Ford testified substantially as follows: I am in the business of manufacturing aluminum bodies for bakery trucks. Jerry Gonce had worked for me about eight or nine months before his death. We paid our men for delivering trucks to Dallas, Houston and other places. I knew that Mrs. Gonce was going with Jerry. It made no difference to me whether Jerry came home by bus or car. We paid Jerry Gonce $26.00 for delivering the truck to Dallas. We arrived at this figure by estimating the time it would take to go to and from Dallas and allowed $1.25 per hour. We also allowed him $8.00 bus fare for his return trip. The men did not have permission to drive out of the most direct route to Dallas. When Gonce had the truck at the shop repairing it, I guess I could have told him to leave it at the shop. After I had arranged for Mr. Gonce to deliver the truck if I had become unhappy with him about something I could have told him to leave the truck and send someone else. "Q. All right. By the same token, you could have stopped him part of the way, if you had elected to, and brought him back, if there had been occasion? I am not saying that there was one, but you could have if you had wanted to, could you or not? A. I guess I could have." It was extra pay for the men when they delivered trucks. I suppose that I had the right to control them if I wanted to use that right. I never did have a special conversation with them to the effect that they were on their own and independent of me. I paid Gonce before he left on his trip to Dallas. His wife cashed the check after his death.

One of the controlling questions in this case is whether Gonce was an employee or an independent contractor. The majority and the dissenting opinion in Newspapers, Inc. v. Love, 380 S.W.2d 582, (Sup.Ct.), held that it is the right of control over the details of the work that determines the master-servant relationship. The insurance company's position here is that the evidence shows as a matter of law that Gonce was at the time of his injury an independent contractor. The evidence outlined above, and other facts and circumstances in evidence, constitutes some evidence that the employer-employee relationship existed.

Appellant's point that there is no evidence to support the jury's answer that Gonce was in the course of his employment cannot be sustained. In Jecker v. Western Alliance Insurance Company, 369 S.W.2d 776, (Sup.Ct.), the court said:

"The general rule is, in reality, even broader than we had occasion to state it in Coleman. It is that injuries incurred by a workman while traveling on public streets and highways are not incurred in the course of employment. But there are exceptions to that rule. One of the exceptions is when injury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract. * * * The rationale of it is that since the workman's employment requires him to subject himself to the risks and hazards of streets and highways, his injuries grow out of his employment. Smith v. Texas Employers' Ins. Ass'n, supra. The exception was well established before the adoption of Sec. 1b of Art. 8309 by the Legislature, and it must be assumed that the section was enacted with full knowledge of it. Was the exception abolished by Sec. 1b of Art. 8309? We think not. * * *"

"Our determination of whether there is in the record evidence of probative force that Jecker was in the course of

his employment at the time of his fatal accident is made under governing law as announced above. There is evidence that he was in the course of his employment if there is evidence that (1) he was traveling on the highway pursuant to express or implied provisions of his employment contract that he do so in performance of his duties, and (2) that he would have made the trip had there been no personal or private affairs to be furthered and would not have made it had there been no business of his employer to be furthered."

There is evidence of probative force that Gonce was traveling on the highway at the time of his death pursuant to express provisions of his employment contract; that he was being paid by the hour for the time he was traveling; that his transportation was being paid for by his employer and that he would not have made the trip to Dallas except for the business of his employer. We find that there was some evidence to support the jury's finding that Gonce was in the course of his employment. Jecker v. Western Alliance Insurance Company, Tex., 369 S.W.2d 776; Texas Employers' Ins. Ass'n v. Inge, 146 Tex. 347, 208 S.W.2d 867.

■ Appellant objected to the definition of employee because it failed to instruct the jury on the right of control. The court gave the statutory definition of the term. This is all that is required. Blankenship v. Royal Indemnity Company, 128 Tex. 26, 95 S.W.2d 366.

The appellant objected to the definition of independent contractor because "undue emphasis to the prejudice of this party in what control is kept by the independent contractor in order to be an independent contractor." The definition was apparently taken from Dr. Pepper Bottling Co. et al. v. Rainboldt, Tex.Civ.App., 66 S.W.2d 496, which case was reversed by the Commission of Appeals in Schroeder et al. v. Rainboldt et al., 128 Tex. 269, 97 S.W.2d 679. The Commission of Appeals, however, did not pass upon the correctness of the definition. We find the court did not err in overruling appellant's objection.

■ Ford, a partner in Ford Brothers, was called as a witness by appellee. During the first part of Ford's testimony the court sustained appellant's objections that counsel was leading the witness. Sometime later appellant objected to a question because it was leading, suggestive, prejudicial and argumentative. At this point the court decided that Ford was a hostile witness and permitted appellees to ask the witness leading questions. Some of the questions asked thereafter were substantially the same as those which had been asked the witness before such ruling. Under these circumstances we find that the appellant has not discharged its burden of proving that the asking of such leading questions was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

■ We have considered the entire record and find that the jury's answers are not against the great weight and preponderance of the evidence and that the evidence is sufficient to support such findings. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.