UNITED STATES FIRE INSURANCE
COMPANY, Appellant,

v.

**Marilyn Jean BROWN, et al., Appellees.**

No. 10–83–018–CV.

Court of Appeals of Texas,
Waco.

June 30, 1983.

Rehearing Denied July 21, 1983.

Beverly Willis, Naman, Howell, Smith & Lee, P.C., Waco, for appellant.

Randall C. Simmon, Cuba, Simmon & Mayfield, Temple, for appellees.

HALL, Justice.

This is a worker's compensation case. Paul Brown, the employee, a registered nurse, suffered fatal injuries in an automobile collision on Texas Highway 6 approximately seven miles northwest of Waco while enroute in his car to a hospital in Meridian to work a shift assigned to him by his employer, Homemakers of Waco, Inc., whose business was providing health care personnel to client hospitals. The trial court rendered summary judgment in favor of appellees, Brown's widow and surviving daughter, awarding them death benefits and funeral expenses. Appellant, the worker's compensation insurance carrier, brought this appeal.

The single question on appeal, raised by appellant in trial court, is whether the summary judgment evidence conclusively establishes that Brown was in the course of his

employment at the time of the accident which caused his death. We hold that it does.

The summary judgment evidence is composed entirely of appellant's admissions and the deposition of Brown's supervisor with Homemakers of Waco, Inc. We find no dispute in the material facts.

Brown was a registered nurse employed by Homemakers, appellant's insured, under an oral contract. Homemakers provided temporary medical and health care personnel to requesting clients. Hospitals and individuals who needed such services called Homemakers' office in Waco, and the office coordinator directed appropriate employee assignments from its pool of employees. Homemakers paid the employees a fixed hourly rate and billed the clients at a higher hourly rate. This difference formed the company's basic business profit. Homemakers also paid its traveling employees mileage expenses at the rate of 20 cents per mile for travel from their homes to their assignments, except that mileage was not paid for the first nor the last five miles of each trip. (This exception was to avoid any unfair monetary advantage to employees who had assignments distant from their home over those who had nearby assignments). Homemakers charged the clients 24 cents for each mile it paid 20 cents to the employee, thus generating four cents per mile as part of its gross income from the client. This mileage income was used by Homemakers for administrative expenses.

Homemakers had no interest in the mode of transportation used by the employees to reach their assignments. The employees were not furnished cars or other means of transportation by the company. However, they were authorized by Homemakers to use their own automobiles and told at the time of hiring that this was expected of them. This authorization and expectation was explained to Brown when he was hired.

The employees were not paid a salary for their travel time, but their hourly salaries began at the time designated for the start of their shifts at the assignments. None of their health care services were to be per-formed in their travels to and from the assignments. They were not required to report to Homemakers' office before beginning travel to an assignment.

The Waco office of Homemakers serves a six-county area, with several client hospitals. Brown's assignments covered Hillcrest Hospital and Providence Hospital in Waco, Grant-Buie Hospital in Hillsboro, Torbett-Hutchings-Smith Hospital in Marlin, West Community Hospital in West, Coryell Memorial Hospital in Gatesville, and the Meridian Hospital Authority in Meridian. Homemakers employed 20 to 30 nurses whose schedules were similar to Brown's. Without these employees who were willing to travel to different hospitals, Homemakers' business would suffer drastic reduction, and the employees' agreement to travel was a part of their oral contract of employment at the time of hiring.

The employees could refuse an assignment by Homemakers, but excessive refusals without good reason resulted in contract termination by Homemakers. Brown was an excellent employee. He had refused only two or three assignments, always with just cause. He was a favorite of Homemakers' hospital clients, often requested by them by name.

Brown lived in Troy, distant from any hospitals, and all of his assignments for Homemakers required him to travel far more than ten miles round-trip from his home. Brown was informed before he was hired that he would do much highway traveling, and a basic part of his employment agreement was that he would have to travel often. In the two weeks before his death, Brown worked at four different hospitals, never the same one for two days in succession. Prior to his death on November 22, 1980, Brown had traveled more than 9,370 miles in 1980 for which Homemakers paid him mileage expenses.

At the time of Brown's death Homemakers had directed Brown to report to Meridian Hospital to work the shift beginning at 11:00 P.M. On the preceding day Brown had worked shifts at this hospital from 3:00 P.M. to 11:00 P.M. and from 11:00 P.M. to

7:00 A.M. on November 22nd. He was traveling from his home in Troy on a direct route to the hospital when the accident which caused his death occurred about 10:00 P.M.

Since Brown suffered his fatal injuries while traveling on a public highway, whether he was in the course of his employment at the time "is measured and limited" by the provisions of Sec. 1 and 1b of art. 8309, Vernon's Tex.Civ.St. *Jecker v. Western Alliance Insurance Company,* 369 S.W.2d 776, 777 (Tex.1963). An "injury sustained in the course of employment" is defined in Sec. 1 of art. 8309 to include, after certain exclusions not relevant here, "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon employer's premises or elsewhere." Sec. 1b provides in pertinent part as follows:

"Unless transportation is furnished as a part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, or unless the employee is directed in his employment to proceed from one place to another place, such transportation shall not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment . . . ."

The undisputed facts of our case clearly establish that the requirements of Sec. 1b were satisfied, and appellant does not argue otherwise. Brown's travel expenses were reimbursed by his employer. Also, Brown was "directed in his employment to proceed from one place to another" within the meaning of the statute since this exception includes "those situations in which the employee proceeds from one place to another under the terms of an employment which expressly or impliedly requires that he do so to discharge the duties of his employment". *Jecker,* supra, at 369 S.W.2d 779. Nevertheless, appellant points out the holding of

our Supreme Court in *Texas General Indemnity Co. v. Bottom,* 365 S.W.2d 350, 353–354 (Tex.1963), that Sec. 1b does not enlarge the definition found in Sec. 1, and that even where one of the conditions specified in Sec. 1b is met "[i]t is still necessary . . . for the claimant to show that the injury is of a kind and character that had to do with and originated in the work, business, trade or profession of his employer and was received while he was engaged in or about the furtherance of the affairs or business of the employer."

It is the general rule that injuries incurred by a worker while traveling on public streets and highways are not incurred in the course of employment. *Jecker,* supra, at 369 S.W.2d 778. In our case appellant relies upon this rule for asserting the summary judgment was improper. But there are exceptions to this rule. One, recognized by the Supreme Court in the *Jecker* case, "is when injury occurs while the workman is traveling on the public streets or highways pursuant to express or implied requirements of his employment contract." The Court stated the rationale of the exception to be that "since the workman's employment requires him to subject himself to the risks and hazards of streets and highways, his injuries grow out of his employment." The Court concluded that since the exception was well established before the adoption of Sec. 1b of art. 8309 and it must be assumed that the section was enacted with full knowledge by the Legislature of the exception, that the exception was not abolished by Sec. 1b. Relating to the facts in *Jecker,* the Court reasoned that "the Legislature surely did not intend [by the enactment of Sec. 1b] to provide that an employee whose employment requires him to travel at his own expense in his own automobile on streets and highways, either constantly or intermittently, should be denied compensation if accidently injured while thus exposed to risks growing out of his employment. Any such holding would be wholly unjust to salesmen, servicemen, repairmen, deliverymen, and a host of others who may be required to use their own

automobiles in their work, and would be a strict rather than a liberal interpretation of the Workmen's Compensation Act."

 The undisputed evidence in our case establishes that Brown traveled on the public highways pursuant to express or implied requirements of his employment contract. The very nature of Homemakers' business and of Brown's duties demanded that he be frequently on the highways. Contrary to appellant's contention, Brown's work situation was different from that of the ordinary employee who travels each day to a specific location to begin work in that Brown's duties required his traveling almost every day to seven different hospitals located in six different counties. Without the willingness of employees like Brown to expose themselves to the hazards of long distances of highway travel to constantly varying work sites, Homemakers could not have continued business operations under its system. The tacit agreement between Homemakers and its employees, including Brown, that the employees use their own automobiles for traveling to distant assignments with mileage expense reimbursements also benefited Homemakers by assuring prompt and certain transportation of the health care service to the clients. Additionally, the travel to these distant assignments by the employees generated income to Homemakers from its clients at the rate of four cents per mile traveled. Although appellant contends this income was not profit because it was used to pay expenses of administering the mileage reimbursement to employees, this revenue of course released other income Homemakers would have used for the administrative expense.

Under the undisputed facts of the summary judgment record Brown was not simply on his way to work at the time of his injuries, even though his hourly rate did not begin until he reached Meridian Hospital. Brown's agreement to travel in his automobile from his home in Troy to any one of seven hospitals assigned to him by Homemakers was an integral part of his employment contract, and he began execution of this part of his job duties when he left his home on direct route to Meridian Hospital.

The judgment is affirmed.